# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

| | |
|---|---|
| *In re Ex Parte Application of* <br><br> Nokia Technologies Oy and Alcatel Lucent SAS, <br><br> Applicants, <br><br> For an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings. | Civil Action No. 1:23-mc-00032 |

### *EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Nokia Technologies Oy and Alcatel Lucent SAS hereby respectfully apply to the Court *ex parte* for an order pursuant to 28 U.S.C. § 1782 granting leave to obtain targeted discovery from Amazon.com, Inc. for use in pending and contemplated foreign actions in Germany. This application is supported by the Memorandum of Points and Authorities, the Declaration of Ryan W. Koppelman, and the Declaration of Tim Smentkowski, filed concurrently herewith. A Proposed Order and Rule 45 subpoena to be ordered and authorized to serve on Amazon.com, Inc. are included herewith.

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | FACTUAL BACKGROUND | | 5 |
| | A. | Nokia's HEVC Video Coding Patents. | 5 |
| | B. | Nokia's Digital Content Delivery Systems Patent. | 8 |
| III. | LEGAL STANDARD | | 10 |
| IV. | ARGUMENT | | 11 |
| | A. | Nokia Has Met the Four Statutory Requirements of Section 1782. | 11 |
| | B. | The *Intel* Factors Strongly Favor Granting Nokia's Application. | 13 |
| V. | CONCLUSION | | 18 |

I.     INTRODUCTION

Pursuant to 28 U.S.C. § 1782, Nokia[1] respectfully requests that the Court grant leave for Nokia to serve a subpoena seeking narrowly tailored discovery from Amazon[2] for use in three specific foreign cases, which are part of the global patent litigation between Nokia and Amazon. Section 1782 allows for discovery in the United States via subpoena for use in foreign litigation. A court order approving the service of such a subpoena may be sought via application to the Court on an *ex parte* basis,[3] and after the subpoena is served, its enforcement is governed by Rules 26 and 45 of the Federal Rules of Civil Procedure.

Nokia is currently seeking global enforcement of its patents, only after years of efforts to negotiate a license with Amazon. Despite Amazon committing widespread global infringement with its Prime Video service and Nokia's many attempts to negotiate, Amazon remains unlicensed. As a result, Nokia has already asserted 29 different patents against Amazon, including in the District of Delaware, the U.S. International Trade Commission, Germany, India, the European Union's Unified Patent Court, and the United Kingdom. It is in this context that Nokia is seeking discovery under Section 1782, and the requested discovery is specifically for use in three foreign patent infringement cases, including one pending case that Nokia has already filed in Germany against Amazon and two additional cases that Nokia plans to file against Amazon in Germany. Nokia intends to file the two additional cases in the near future and believes the discovery requested here would provide useful and relevant evidence of infringement.

---

[1] Herein, Nokia Technologies Oy ("Nokia Technologies") and Alcatel Lucent SAS ("Alcatel Lucent") (collectively, "Nokia").
[2] Herein, Amazon.com, Inc. ("Amazon").
[3] Despite the *ex parte* nature of this filing and the Court's ability to rule on this application without hearing from Amazon, Nokia is serving courtesy copies of these papers on Amazon's registered agent.

1

While Nokia's patent portfolio covers many areas of technology, the relevant patented technologies for this 1782 application relate to three specific European patents in Nokia's portfolio covering video coding techniques and digital content delivery systems. *First*, with regards to video coding, Nokia is seeking 1782 discovery in connection with two of Nokia's European patents. Nokia has already asserted these two video coding patents against Amazon in Germany by asserting only patent claims directed to *standardized* video *de*coding. But those same two Nokia patents also contain separate patent claims directed to *non-standardized* video *en*coding that Nokia plans to assert against Amazon's Prime Video service in two additional future cases to be filed in Germany, which is where the requested 1782 discovery would be useful and highly relevant. While there is significant evidence that Amazon is infringing Nokia's *de*coding patent claims, there is less information publicly available confirming Amazon's use of Nokia's *en*coding patent claims. Because it is likely that Amazon is using related techniques patented by Nokia as to both video *en*coding and *de*coding, Nokia's 1782 application seeks additional information from Amazon to confirm and further evidence Amazon's infringement of the *en*coding patent claims. *Second*, with regards to digital content delivery, Nokia is seeking 1782 discovery in connection with one of its European patents. Nokia has already asserted this content delivery patent in Germany, and the requested 1782 discovery would be useful for this pending case in Germany. For this patent, Nokia is seeking nonpublic information regarding the inner workings of how Amazon Prime Video uses a content delivery network (CDN) for content distribution. Nokia has already reviewed publicly available information and found that Amazon's description of these features in its own documentation tracks the claims of Nokia's CDN patent, sufficient to already assert this patent in Germany, but the discovery requested here will be useful and highly relevant to confirm infringement for this pending case in Germany. In any event, all the requested discovery with this

Section 1782 application will aid the foreign court in fully and fairly adjudicating Amazon's infringement of Nokia's patents. The table below is intended to clarify the status of each patent at issue here:

| Patent | Technology Covered | Type of 1782 Request | Status of Patent Assertion |
|---|---|---|---|
| EP 2774375 B1 | Video coding | In contemplation of patent infringement assertion | The *de*coding claims in this patent have already been asserted against Amazon in pending foreign litigation. This 1782 petition requests discovery in contemplation of action for *en*coding claims of the patent. |
| EP 2375749 B1 | Video coding | In contemplation of patent infringement assertion | The *de*coding claims in this patent have already been asserted against Amazon in pending foreign litigation. This 1782 petition requests discovery in contemplation of action for *en*coding claims of the patent. |
| EP 2399207 B1 | Content distribution networks (CDNs) | Pending case | The CDN claims in this patent have already been asserted against Amazon in pending foreign litigation in Germany. This 1782 petition requests discovery to aid in that litigation. |

Importantly, Nokia's application meets both the statutory requirements and discretionary factors relevant to a Section 1782 request. To grant a 1782 application, the Fourth Circuit first considers four statutory requirements, which are all met here. *First*, the discovery is sought from an entity that "resides or is found" in this District because Amazon maintains its second headquarters, or HQ2, in Arlington, Virginia. It also maintains one of its largest data centers that supports Amazon Prime Video streaming services in Herndon, Virginia. *Second*, as the patent owner, current plaintiff, and prospective plaintiff, Nokia qualifies as an "interested person" in both the pending German action and the planned additional actions in Germany. *Third*, Nokia's proposed subpoena seeks evidence, as is required, in the form of technical documents from

3

Amazon. *Fourth*, Nokia seeks the discovery "for use in a proceeding in a foreign… tribunal," specifically in the courts of Germany. The proceeding in a foreign tribunal is not required to be a pending or imminent action. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 253-54 (2004). Rather, it may be a proceeding in "reasonable contemplation," including when a party is in the investigative stage of determining whether to bring the action. *Id.* at 259. Nokia's pending and planned actions satisfy this fourth statutory requirement.

Turning next to the discretionary considerations, the Supreme Court's four discretionary *Intel* factors also all weigh in favor of granting Nokia's request. *See Intel,* 542 U.S. at 264-65. *First*, there are not sufficient discovery mechanisms in the foreign court at issue here for Nokia to obtain the requested discovery from Amazon, which satisfies factor one. *Second*, the foreign jurisdiction at issue – Germany – is receptive to the type of discovery sought by Nokia, which satisfies factor two. *Third*, the request is not made to circumvent any limitation imposed by the German court, which satisfies factor three. *Fourth*, the proposed discovery requests are narrowly tailored and not unduly intrusive or burdensome to Amazon, which satisfies factor four.

This application is supported by this Memorandum of Points and Authorities, the Declaration of Ryan W. Koppelman, and the Declaration of Tim Smentkowski, filed concurrently herewith. A Proposed Order and Rule 45 subpoena to be ordered and authorized to serve on Amazon are included herewith. The patents in question, EP 2774375 B1 (the "EP '375 Patent"), EP 2375749 B1 (the "EP '749 Patent"), EP 2399207 B1 (the "EP '207 Patent") are also included as Exhibits A, B, and C, respectively. Accordingly, Nokia respectfully requests that the Court enter the proposed Order, allowing Nokia to serve the proposed subpoena, attached herewith.

## II.     FACTUAL BACKGROUND

### A.     Nokia's HEVC Video Coding Patents.

The two video coding patents relate specifically to the H.265 standard, also known as HEVC, which stands for High Efficiency Video Coding. Koppelman Decl. at ¶ 8. Video coding in general involves compressing video files into a format called a "bitstream" so that the video can be more efficiently stored for subsequent playback or streamed over a network connection for more contemporaneous playback. *Id.* at ¶ 9. The compressed bitstreams are later decompressed for playback. *Id.* The compressing is referred to as encoding and the decompressing is referred to as decoding. *Id.* at ¶ 10. Nokia's video patents at issue in this 1782 application include separate claims directed to encoding and decoding. *Id.* at ¶ 11. Amazon engages in both encoding and decoding of video content. *Id.* at ¶ 12. As a result, Amazon infringes different claims of Nokia's video coding patents in different ways, requiring different types of proof. *Id.*

The HEVC standard specifies the decoding process. *Id.* at ¶ 13. That is, an HEVC decoder receives a bitstream and decodes it according to the HEVC standard. *Id.* Because the HEVC standard specifies how HEVC decoders work, an evidentiary showing that a decoder is HEVC standard-compliant is very often sufficient to prove infringement of decoder patent claims. *Id.* at ¶ 14. Many of Amazon's end-user devices, such as televisions and streaming media players, are HEVC standard-compliant decoders. *Id.* at ¶ 15.

By contrast, the HEVC Standard does not specify an encoding process. *Id.* at ¶ 16. Therefore, encoders have flexibility in compiling video bitstreams. *Id.* Because encoding processes are not specified by the HEVC standard, additional evidence would be useful in proving infringement of encoding patent claims, like those that Nokia is contemplating filing against Amazon. *Id.* at ¶ 17. Further complicating things, HEVC-compliant bitstreams can be encrypted (which Amazon does) to protect the underlying media content – e.g., movies, TV shows, etc. –

5

from illegal copying and piracy. *Id.* at ¶ 18. A side effect of this encryption is that one typically cannot perform any in-depth analysis of the encoded bitstream which could otherwise be useful for determining patent infringement. *Id.* Thus, the discovery requested here will be useful and relevant in the analysis of the encoded bitstreams to confirm infringement of the encoding claims of the two video coding patents. *Id.* at ¶ 19. Each of the Nokia video coding patents at issue in this 1782 application are discussed in turn.

### 1. The EP '375 Patent – HEVC Merge Mode

The EP '375 Patent is owned by Nokia Technologies and is directed to coding a block of pixels through a process termed "merge mode," which saves the bits for the motion vector by sharing the motion vector with neighboring blocks of pixels. *See id.* at Exh. A. Claim 1 is representative of the claimed invention as to an encoder:

> 1. A method comprising: determining for the block (900) of pixels a set of spatial motion vector prediction candidates located below-left (901), left (902), above-left (905), above (904) and above-right (903) of the prediction unit; the spatial motion vector prediction candidates being provided with motion information comprising at least a motion vector and a reference index receiving a block (900) of pixels including a prediction unit; determining a subset of spatial motion vector prediction candidate pairs among existing spatial motion vector prediction candidate pairs for comparison among all available spatial motion vector prediction candidate pairs in the set of spatial motion vector prediction candidates; selecting a spatial motion vector prediction candidate from the set of spatial motion vector prediction candidates as a potential spatial motion vector prediction candidate to be included in a merge list for the prediction unit; examining the subset of spatial motion vector prediction candidate pairs to determine which other spatial motion vector prediction candidate is defined to belong to the same spatial motion vector prediction candidate pair than the selected spatial motion vector prediction candidate (610); comparing motion information of the selected spatial motion vector prediction candidate with motion information of the other spatial motion vector prediction candidate; comparing motion information of the selected spatial motion vector prediction candidate with motion information of the other spatial motion vector prediction candidate; wherein the method further comprises selecting one motion vector prediction candidate from the merge list to represent a motion vector prediction for the block of pixels; determining a maximum number of spatial motion vector prediction candidates to be included in a merge list; limiting the number of spatial motion vector prediction candidates in the merge list smaller than

or equal to the maximum number; if the number of spatial motion vector prediction candidates in the merge list is smaller than the maximum number, examining whether a prediction unit to which the potential spatial motion vector prediction candidate belongs is available for motion prediction; if so, performing at least one of the following:

. . .

if the potential spatial motion vector prediction candidate (903) is located on the right side of the spatial motion vector prediction candidate (904) above the prediction unit, excluding the potential spatial motion vector prediction candidate (903) from the merge list if the potential spatial motion vector prediction candidate (903) has the same motion vectors and the same reference indices than the spatial motion vector prediction candidate (904) above the prediction unit; if the potential spatial motion vector prediction candidate (901) is located below the spatial motion vector prediction candidate (902) on the left side of the prediction unit, excluding the potential spatial motion vector prediction candidate (901) from the merge list if the potential spatial motion vector prediction candidate (901) has the same motion vectors and the same reference indices than the spatial motion vector prediction candidate (902) on the left side of the prediction unit; if the potential spatial motion vector prediction candidate (905) is cornerwise above-left neighbouring the prediction unit, excluding the potential spatial motion vector prediction candidate (905) from the merge list if any of the following conditions are fulfilled:
- all the other spatial motion vector prediction candidates (901-904) have been included in the merge list;
- the potential spatial motion vector prediction candidate (905) has the same motion vectors and the same reference indices than the spatial motion vector prediction candidate (904) above the prediction unit;
- the potential spatial motion vector prediction candidate (905) has the same motion vectors and the same reference indices than the spatial motion vector prediction candidate (902) on the left side of the prediction unit.

*Id.* This is one of the two patents with separate decoder claims for which Nokia has already sued Amazon for infringement in Germany. Smentkowski Decl. at ¶¶ 8, 10. Again, because Amazon does both encoding and decoding of video in the HEVC-compliant formats, Amazon infringes different claims of this patent in different ways. Koppelman Decl. at ¶ 12. To confirm and further evidence Amazon's infringement of the encoder claims, Nokia's 1782 application seeks additional non-public information from Amazon that would be useful to prove infringement in Nokia's contemplated action in the courts of Germany.

### 2.  The EP '749 Patent – Sequence of Coded Pictures

The EP '749 Patent is owned by Nokia Technologies and is directed to a method of encoding a sequence of pictures into a sequence of coded pictures. *Id.* at Exh. B. Claim 1 is representative of the claimed invention:

> 1. A method of encoding a sequence of pictures into a sequence of coded pictures, the sequence of coded pictures being on the same spatial scalability layer and on the same quality scalability layer, the method comprising encoding a first picture of the sequence of pictures into a first coded reference picture of said sequence of coded pictures, the first coded reference picture comprising a first temporal level value for indicating temporal scalability characterised by encoding, with prediction from the first coded reference picture, a second picture of the sequence of pictures into a second coded picture of said sequence of coded pictures, the second coded picture comprising a second temporal level value for indicating temporal scalability of the second coded picture residing in an enhancement temporal scalability layer, wherein the second coded picture and all following coded pictures in decoding order having the second temporal level value are decodable without inter prediction from any coded picture with the same second temporal level value prior to, in decoding order, the second coded picture, and encoding an indication for signalling that the second coded picture and the all following coded pictures in decoding order having the second temporal level value are decodable without inter prediction from any coded picture with the same second temporal level value in the sequence of coded pictures prior to, in decoding order, the second coded picture.

*Id.* This is the other of the two patents with separate decoder claims for which Nokia has already sued Amazon for infringement in Germany. Smentkowski Decl. at ¶¶ 9, 10. To confirm and further evidence Amazon's infringement of the encoder claims, Nokia's 1782 application seeks additional non-public information from Amazon that would be useful to prove infringement in Nokia's contemplated action in Germany.

### B.  Nokia's Digital Content Delivery Systems Patent.

### 1.  The "EP '207 Patent" – Content Distribution Networks

The third Nokia patent relates to content distribution networks, or CDNs, that utilize content distribution services or CDSs. Koppelman Decl. at Exh. C. In general, a CDN is a geographically distributed network of servers that allows for lower latency delivery of content,

8

such as media files, over the Internet. *Id.* at ¶ 20. Here again, public information points towards Amazon's infringement via its Prime Video service. *Id.* at ¶ 21. According to Amazon's public documentation, Amazon has branded its CDN as "CloudFront," which caches Internet content on hundreds of points of presence closer to content owners' users around the world. *Id.* at ¶ 22. CloudFront has an additional feature branded "Origin Shield," which increases caching ratios and protects content owners' origin servers by preventing server overload. *Id.*

The EP '207 Patent is owned by Alcatel Lucent, which is owned by Nokia's parent company, and is directed to improvements to content distribution services (CDSs), specifically through the use of specially configured content storage nodes (CSNs). *Id.* at Exh. C. Claim 1 is representative of the claimed invention:

> 1. A content distribution system CDS (100) for distributing a plurality of available content objects, comprising: a plurality of content storage nodes CSNs (120, 130), each CSN comprising a network node adapted for communication with at least one other network node and a storage device (240) having a first memory portion allocated to local space, L, wherein the local space of each CSN is adapted to store available content objects having a relatively high utility level; characterized in that the storage device (240) further has a second memory portion allocated to federated space, F, wherein the federated space of each CSN is adapted to cooperate with the federated space of other CSNs to store at least a portion of available content objects having a relatively low utility level; and content objects are migrated between local space and federated space in response to differences in content object utility level.

*Id.* Nokia has already asserted this patent in a pending case in Germany, and the 1782 discovery sought here is for use in that pending litigation. *See* Smentkowski Decl. at ¶¶ 7, 10. Amazon's public documentation indicates that Amazon is infringing the '207 Patent by virtue of Amazon Prime Video's use of CDNs. Koppelman Decl. at. at ¶ 21. Amazon's description of these features in its own documentation generally tracks the claims of Nokia's CDN patent, in particular with how Amazon's use of CloudFront for Amazon Prime Video handles regional edge caches in video on demand (VOD) streaming. *Id.* at ¶ 23. To confirm and further evidence Amazon's infringement,

9

Nokia's 1782 application seeks additional non-public information from Amazon that would be useful to prove infringement in Nokia' pending action in Germany.

### III. LEGAL STANDARD

The purpose of Section 1782 is "to provide federal-court assistance in the gathering of evidence for use in a foreign tribunal." *Intel*, 542 U.S. at 247. Section 1782 provides, in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal.... The order may be made... upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a). Section 1782 sets forth four threshold statutory requirements that authorize a district court to grant a Section 1782 application: (1) the application must be made to the "district court for the district in which the person resides or is found," (2) the application must come from "an interested person" or a foreign tribunal, (3) the application must seek evidence, including testimony or a document, and (4) the evidence sought by the application must be "for use in a proceeding in a foreign or international tribunal." *Newbrook Shipping Corp. v. Glob. Mktg. Sys.*, 31 F.4th 889, 894 (2022) (quoting *Intel*, 542 U.S. at 246).

In connection with the fourth statutory requirement, the granting of an application for 1782 discovery does not require a pending or imminent action. *See Intel,* 542 U.S. at 253-54. Rather, the Supreme Court has determined that 1782 requires only that a dispositive ruling be in "reasonable contemplation" and that the evidence is eventually used in such a proceeding. *Id.* at 259. An action can be considered "in contemplation" when a party is in the *investigative stage* of determining whether to bring an action against an opposing party. *Id.*

10

Once the statutory requirements are met, a district court considers four discretionary factors, the *Intel* factors, set forth by the Supreme Court: (1) (i) whether "the person from whom discovery is sought is a participant in the foreign proceeding," or (ii) the foreign court does not allow the same degree of discovery as is allowed in the United States, (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance," (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," and (4) whether the request is otherwise "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65; *Heraeus Kulzer, GmbH v. Biomet, Inc.,* 633 F.3d 591, 597 (7th Cir. 2011).

IV.    **ARGUMENT**

Nokia respectfully submits that each of the statutory requirements are satisfied here, and that the discretionary *Intel* factors favor granting Nokia's application. Accordingly, Nokia requests that the Court grant the application and provide leave to Nokia to serve its subpoena.

A.    **Nokia Has Met the Four Statutory Requirements of Section 1782.**

*First*, Amazon is the person from whom discovery is sought, and it "resides or is found" in this District. *See* 28 U.S.C. § 1782(a). Amazon maintains one of its corporate headquarters, Amazon HQ2, in Arlington, Virginia.[4] Amazon also maintains a large data center in Herndon, Virginia. Koppelman Decl. at ¶ 24. Both Amazon facilities are in this District. Amazon currently has over 30,000 employees in the Virginia and DC area. *Id.*[5] A corporation is "found" in the District when the corporation is doing business there through an officer or agent sufficient to

---

[4] *Corporate Offices*, AMAZON, https://www.aboutamazon.com/workplace/corporate-offices (last visited Sept. 20, 2023) (stating Amazon has "establish[ed] . . . new headquarters in . . . Arlington, Virginia.").
[5] *Id.*

11

establish an actual presence there. *Eli Lilly & Co. v. Novartis Pharma AG*, 37 F.4th 160, 164 (4th Cir. 2022). Accordingly, Amazon's significant operations in Arlington and Herndon are sufficient to find that Amazon resides or is found in the District. Thus, the first statutory requirement is met.

*Second*, Nokia qualifies as an interested party because it will be the plaintiff in the Contemplated Action. 28 U.S.C. § 1782(a); *Intel*, 542 U.S. at 256 ("No doubt litigants are included among…the 'interested person[s]' who may invoke § 1782."). Thus, the second statutory requirement is met.

*Third*, it is required that the application must seek evidence, including testimony or a document. This is satisfied here because Nokia's proposed subpoena seeks technical documents from Amazon. *See* Attached Proposed Subpoena. Thus, the third statutory requirement is met.

*Fourth*, Nokia seeks 1782 discovery to support Nokia's pending case in Germany and its potential infringement claims in its contemplated actions in the courts of Germany, thus satisfying the "foreign tribunal" statutory requirement. Smentkowski Decl. at ¶¶ 7-10; *see* 28 U.S.C. § 1782(a) (the discovery sought must be used for a "proceeding before a foreign tribunal"). A foreign court is considered to be a tribunal when it "acts as a first-instance decisionmaker." *Intel*, 542 U.S. at 271. The courts of Germany have been recognized as qualifying as foreign tribunals under Section 1782. *See In re Gilead Pharmasset LLC*, No. 14-mc-243 (GMS), 2015 U.S. Dist. LEXIS 48720, at *3-5 (D. Del. Apr. 14, 2015). Notably, discovery under 1782 does not require a pending or imminent action in the foreign tribunal. *See Intel*, 542 U.S. at 253-54. Rather, it is only required that a dispositive ruling be in "reasonable contemplation" and that the evidence is eventually used in such a proceeding, which is the case here. *See id.* at 259.

### B. The *Intel* Factors Strongly Favor Granting Nokia's Application.

#### 1. The first *Intel* factor favors 1782 discovery because German courts do not allow the same degree of discovery.

The first *Intel* factor weighs in favor of granting discovery if: (i) the 1782 recipient is not a party to the foreign litigation, or (ii) the foreign court does not allow the same degree of discovery as is allowed in the United States. *See Heraeus Kulzer,* 633 F.3d at 597. The second scenario applies here because the courts of Germany do not provide for the same degree of discovery as allowed in the United States. *See* Smentkowski Decl. at ¶¶ 3-5.

In *Heraeus Kulzer*, Heraeus sued Biomet Inc. in Germany for theft of trade secrets and requested 1782 discovery from the defendant in furtherance of the German action. *Heraeus Kulzer,* 633 F.3d at 593. In that case, the Court reversed the lower court's denial of the 1782 petition, specifically reasoning that a foreign litigant could not "obtain even remotely comparable discovery by utilizing German procedures." *Id.* at 597. In reversing the lower court's denial for 1782 discovery, the Court called Heraeus' 1782 request "a textbook predicate for a successful § 1782 petition." *Id.* (citation omitted). Here, Amazon is expected to be a defendant participant in the contemplated actions in Germany, but it is well established that 1782 discovery is greater in scope than discovery from German courts. *See id.* Under the discovery procedures of German courts, a party must request specific documents by name, which provides access to much narrower discovery than is available through 1782 discovery. *See* Smentkowski Decl. at ¶ 4. Indeed, the German courts do not provide a mechanism for discovery for contemplated litigation, as authorized by Section 1782 and requested here. Therefore, because the "foreign court does not allow the same degree of discovery as is allowed in the United States," the first *Intel* factor weighs in favor of discovery and the granting of Nokia's application under Section 1782.

13

### 2. The second *Intel* factor favors 1782 discovery because Germany is receptive to 1782 discovery.

The second *Intel* factor "take[s] into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. It focuses on whether the foreign tribunal is willing to consider the information being sought. *In re Ex Parte Application Varian Med. Sys. Int'l AG*, No. 16-MC-80048-MEJ, 2016 WL 1161568, at *4 (N.D. Cal. Mar. 24, 2016). Under this factor, a district court should consider only "authoritative proof" that the foreign tribunal would reject evidence obtained pursuant to Section 1782 based on "language in a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures." *In re Republic of Kazakhstan*, 110 F. Supp. 3d 512, 517 (S.D.N.Y. 2015) (citation omitted).

Here, the nature and character of the contemplated actions involves Nokia's allegation of patent infringement, and therefore the requested technical discovery of Amazon's infringing systems is highly relevant and useful. Moreover, there is no evidence, let alone "authoritative proof" showing that the foreign tribunals would reject the discovery sought here. *See* Smentkowski Decl. at ¶ 6. In fact, prior cases have recognized the receptiveness of German courts to the use of discovery obtained through Section 1782. *See In re Ex Parte Application of Gen. Elec. Co. for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782*, No. 1:22-cv-91125-IT, 2022 U.S. Dist. LEXIS 201177, at *17 (D. Mass. Nov. 4, 2022). Thus, this factor also weighs in favor of discovery and the granting of Nokia's application under Section 1782.

14

> 3. **The third *Intel* factor favors 1782 discovery because there are no restrictions on proof-gathering procedures in Germany that would prohibit the requested discovery.**

The third *Intel* factor considers whether the application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country." *Intel*, 542 U.S. at 265. Notably, Section 1782 does not require that the requested documents be discoverable in the foreign courts. *See id.* at 243; *In re Polymer Sols. Int'l, Inc.*, No. DKC 18-1864, 2019 U.S. Dist. LEXIS 43394, at *18 (D. Md. Mar. 18, 2019) ("§ 1782 does not impose a foreign-discoverability requirement"). Absent any evidence suggesting that the applicant is attempting to circumvent foreign proof-gathering restrictions, this factor weighs in favor of discovery. *See, e.g., In re Financeiros X S.A.*, No. 2:23-mc-576-RMG, 2023 U.S. Dist. LEXIS 157032, at *5-6 (D.S.C. Sept. 5, 2023) (finding this factor weighed in favor of discovery where there was "no evidence" of an attempt to circumvent proof-gathering restrictions of a foreign country).

Nokia's application satisfies this *Intel* factor because there are no restrictions on proof-gathering procedures that would prohibit the requested Section 1782 discovery, and such discovery would be received as evidence in the pending foreign action. As noted above, courts have granted Section 1782 applications seeking evidence for use in the German tribunal at issue here. *See In re Ex Parte Application of Gen. Elec. Co. for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782*, 2022 U.S. Dist. LEXIS 201177, at *17; *See also* Smentkowski Decl. at ¶ 6. As a result, the third *Intel* factor weighs in favor of granting discovery.

> 4. **The Requested Discovery Is Narrowly Tailored to Avoid Undue Burden.**

The fourth *Intel* factor provides that "unduly intrusive or burdensome requests may be rejected or trimmed." *Intel*, 542 U.S. at 265. Courts apply Federal Rule of Civil Procedure 26 to assess whether the discovery sought is overbroad or unduly burdensome. *Mees v. Buiter*, 793 F.3d

15

291, 302 (2d Cir. 2015) ("a district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure"); *see Heraeus Kulzer.*, 633 F.3d at 597 ("The section 1782 screen—the judicial inquiry that the statute requires—is designed for preventing abuses of the right to conduct discovery in a federal district court for use in a foreign court. Once the court has determined that such abuses are unlikely, the ordinary tools of discovery management, including Rule 26, come into play. . ."); *see also Chevron Corp.*, No. 7:10-mc-00067, 2010 U.S. Dist. LEXIS 125174, at *12 (W.D.V.A Nov. 24, 2010) ("Rule 26 of the Federal Rules of Civil Procedure . . . applies to discovery under § 1782"). Pursuant to Rule 26, parties may obtain discovery relevant to any party's claim or defense that is proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1).

Nokia's proposed discovery requests are narrowly tailored to relevant technical information on Amazon's infringing streaming systems, specifically Amazon's HEVC coding and content delivery networks, and should not be found unduly burdensome to Amazon. Specifically, Nokia's proposed subpoena seeks discrete sets of technical documents relating to functionalities that are relevant to the claims of the Nokia's European Patents. For example, Nokia's proposed subpoena specifically seeks the following types of information:

- Technical documents and source code that show how Amazon Prime Video encodes video into HEVC-compliant formats. *See* Request Nos. 1, 6. These requests are narrowly tailored to retrieve evidence that can be used to prove Amazon's infringement of both Nokia EP video coding patents by comparing the contents of these technical documents and source code with the claims of these Nokia patents.

16

- Technical documents and source code that show how Amazon Prime Video encodes video into HEVC-compliant formats using the "merge mode" functions. *See* Request Nos. 2, 6-14. These requests are narrowly tailored to retrieve evidence that can be compared with the claims of EP '375 Patent, which claims aspects of the merge mode functionality, to prove Amazon's infringement.

- Technical documents and source code that show how Amazon Prime Video encodes video into HEVC-compliant formats using STSA pictures and/or TSA pictures. *See* Request Nos. 2, 15-17. These requests are narrowly tailored to retrieve evidence that can be compared with the claims of EP '749 Patent, which claims aspects of the merge mode functionality, to prove Amazon's infringement.

- Unencrypted copies of Amazon's encoded bitstreams that are in HEVC-compliant formats. *See* Request Nos. 4, 5, 18. These requests are narrowly tailored to retrieve evidence that can be used to prove Amazon's infringement of both Nokia EP video coding patents by analyzing the contents of these bitstreams to determine how they were encoded in relation to the claims of these Nokia patents.

- Technical documents and source code that show how Amazon Prime Video specifically utilize Delivery content distribution systems (CDNs), specifically through specially configured content storage nodes (CSNs). *See* Request Nos. 3, 19-21. These requests are narrowly tailored to retrieve evidence that can be compared with the claims of Nokia's EP '207 Patent to show infringement.

Each of the document requests in the subpoena are narrowly tailored to how Amazon's systems work with respect to the streaming and video playback or content delivery in Germany. Further, to the extent that Amazon maintains confidentiality over the requested documents, Nokia is willing

to agree to the entry of a reasonable protective order. Accordingly, this factor also weighs in favor of granting Nokia's application.

## V. CONCLUSION

Nokia seeks narrowly tailored discovery for use in the planned and pending foreign patent infringement cases. Because Nokia's request satisfies the four statutory requirements of 28 U.S.C. § 1782, and all four *Intel* factors weigh in favor of granting Nokia's application, Nokia respectfully requests an order authorizing the issuance of a subpoena in substantially the same form as attached herewith.

Dated: November 9, 2023

*/s/ Kellen Dwyer*
Kellen Dwyer
Virginia State Bar No. 97625
kellen.dwyer@alston.com
**ALSTON & BIRD**
950 F Street NW
Washington, DC 20004
Telephone: (202) 239-3300

Ryan W. Koppelman (*Pro Hac Vice* Forthcoming)
California State Bar No. 290704
ryan.koppelman@alston.com
**ALSTON & BIRD**
333 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 576-1100

**ATTORNEYS FOR APPLICANT NOKIA TECHNOLOGIES AND ALCATEL LUCENT SAS**